**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| TASHA GIPSON, | : | Case No. 1:20-cv-294 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CINCINNATI CHILDREN'S HOSPITAL | : | |
| MEDICAL CENTER, | : | |
| | : | |
| Defendant. | : | |

---

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL (Doc. 14)

---

This matter is before the Court on Defendant's Motion to Compel Production of Documents (Doc. 14). The Court has reviewed Defendant's Motion, Plaintiff's Response in Opposition (Doc. 15) and Defendant's Status Report About Plaintiff's Discovery Deficiencies (Doc. 17). Thus, this matter is ripe for the Court's review. For the reasons set forth, the Court **GRANTS** Defendant's Motion to Compel.

## FACTS

Plaintiff Tasha Gipson ("Plaintiff") is an African American woman. (Complaint ("Compl."), Doc. 1, Pg. ID 3.) She is a registered nurse and began working as a staff nurse at Defendant Cincinnati Children's Hospital Medical Center ("Defendant") in July of 2017. (*Id.*) During her employment, Plaintiff complained about gender and race discrimination and about a scrub tech's violations of safety protocols. (*Id.* at 5.) On February 8, 2019, Plaintiff was terminated by Defendant due to alleged violations of

safety protocols. (*Id*.)

Plaintiff claims she was terminated in retaliation of her prior complaints. (*Id*.) Additionally, Plaintiff claims that, during her employment, she experienced a hostile work environment and race and gender discrimination by her supervisor. (*Id*. at 5-7.) Lastly, Plaintiff also claims that Defendant interfered with her rights to take intermittent FMLA leave to care for her daughter. (*Id*. at 7.) Thus, Plaintiff sued Defendant, asserting claims for race discrimination, gender discrimination, and retaliation under both federal and Ohio law, violations of the Family Medical Leave Act, and intentional infliction of emotional distress.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint with the Court on April 13, 2020. (Compl., Doc. 1.) A Preliminary Pretrial Conference was held on July 7, 2020, during which a status conference was set for September 2020 and a discovery deadline was set for March 16, 2021. (07/07/2020 Calendar Order.) Counsel for Plaintiff did not appear for the September 2020 status conference. (09/29/2020 Minute Entry and Notation Order.) During this conference, Defendant informed the Court that Plaintiff had also failed to timely provide initial disclosures or respond to discovery requests. (*Id*.) The then-presiding judge ordered Plaintiff to show cause "by 10/2/2020 why this case should not be dismissed for failure to prosecute." (*Id*.)

That same day, Plaintiff filed a Motion for Extension of Time to both respond to Defendant's discovery requests and the Court's order to show cause. (*See* Motion for Extension of Time, Doc. 9.) Plaintiff's counsel explained that her failure to respond to

Defendant's discovery requests and attend the status conference was due to administrative error, Plaintiff's counsel experiencing personal family tragedies and emergencies during the summer months of 2020, unexpected legal proceedings in other cases, and the COVID-19 pandemic. (*Id*. at Pg. ID 49-50.) The Court granted the extension of time and required Plaintiff to produce her initial disclosures and responses to Defendant's discovery requests by November 30, 2020. (10/22/2020 Notation Order.)

This case was then reassigned to the undersigned for all further proceedings on November 20, 2020. (11/20/2020 Order Reassigning Case.) During a status conference on January 20, 2021, Plaintiff's counsel informed the Court that "Plaintiff had been diagnosed with COVID-19, ha[d] developed complications, and [would be] on medical leave until at least March 22, 2021." (01/20/2021 Minute Entry.) The Court granted Plaintiff's request to stay the matter and set a status conference for April 7, 2021. (*Id*.) At the April 7, 2021 status conference, Plaintiff's counsel moved to continue the stay for an additional 30 days due to Plaintiff's continued and additional complications related to her COVID-19 diagnosis. (04/08/2021 Minute Entry.)

The Court stayed the case until May 12, 2021 and set a status conference for that date. (*Id*.) However, the Court cautioned that "it would be reluctant to grant any further continuances absent a formal motion with supporting documentation." (*Id*.) The Court continued, explaining that it "has been sympathetic to Plaintiff's medical condition," but that "the delays in discovery date back much further." (*Id*.)

The Court held a status conference on May 12, 2021, (05/12/2021 Minute Entry), and set an Amended Calendar Order requiring Plaintiff's initial disclosures be

produced by July 2, 2021 and setting the discovery cut-off date as October 14, 2021. (05/28/2021 Amended Calendar Order.)

However, the delays continued. In September 2021, Defendant initiated the Court's informal discovery dispute process, and the Court considered the parties' submissions. Ultimately, the Court concluded that Defendant was entitled to majority of the information sought and indicated that either party could file a formal motion of record if necessary. Defendant then filed the instant Motion to Compel on October 25, 2021, seeking responses to its initial discovery requests, more than eighteen months after the case was originally filed with the Court.

## LAW

Federal Rule of Civil Procedure 26(b) provides that **"**Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37 allows for a party to "move for an order compelling discovery or disclosure." Fed. R. Civ. P. 37(a)(1). Rule 37 specifically allows for a motion to compel when a party fails to answer interrogatories or to provide proper responses to requests for production of documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Qashqeesh v. Monster Beverage Corp.*, Case No. 2:20-cv-03776, 2021 WL 3634117, at *2 (S.D. Ohio August 7, 2021) (internal citation omitted). Relevant evidence is evidence that "(1) has any tendency to make a fact more or less probable than it would be without the evidence" and "(2) the fact is of

consequence in determining the action." Fed. R. Civ. P. 401. If the moving party satisfies this burden, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)). Importantly, "[d]istrict courts have broad discretion over docket control and the discovery process" and "the scope of discovery is within the sound discretion of the trial court." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted).

## ANALYSIS

Defendant seeks information pertaining to four primary categories: (a) medical records, (b) disability benefit information, (c) communications with Cincinnati Children's employees and about Cincinnati Children's, and (d) Plaintiff's 2019 W-2. Additionally, Defendant seeks clarification as to whether Plaintiff is withholding the production of documents based on her objections. The Court will discuss each category in turn.

### A.    Medical Records

Defendant is seeking information through multiple discovery requests relating to Plaintiff's medical records or medical records for her daughter (for whom she allegedly took FMLA leave). Specifically, the requests at issue are: Interrogatory Nos. 9 and 10 and Document Requests 6, 7, 26, and 27. Interrogatory 9 and Document Requests 6 and 7 pertain to Plaintiff's physical and mental health. Interrogatory 10 and Document Requests 26 and 27 pertain to Plaintiff's FMLA claim, which is based on the alleged serious condition of her daughter. These categories will be addressed in turn.

### 1. Plaintiff's Medical Records

Interrogatory 9 and Document Requests 6 and 7 seek information regarding

Plaintiff's physical and mental state.

Interrogatory 9 reads:

> Do you claim to have suffered any pain and suffering or emotional distress
> as a result of any act or omission of Defendant? If so, identify each and every
> hospital . . . or other health care provider or counsel who has examined . . .
> you from January 1, 2016 to the present, including . . .

(Discovery Requests, Doc. 14-1, Pg. ID 84.)

Document Request 6 seeks "all documents referring to, reflecting, evidencing or

commenting upon your physical or emotional health or condition on or after January 1,

2016 . . . ." (*Id.* at Pg. ID 91.) Document Request 7 asks for Plaintiff's "complete medical

records and files created and/or maintained by those individuals identified in

Interrogatory 9." (*Id.* at Pg. ID 92.)

Plaintiff does not appear to challenge the discoverability of these records.

Rather, she concedes she did not seek mental health treatment for emotional distress

immediately following the incident, and instead indicates that such treatment was not

sought until November 2020. Plaintiff then responds that the records pertaining to the

treatment she sought at that time, with Mercy Health, have been produced. Plaintiff

also responds that she has provided her medical records pertaining to her COVID

diagnosis and treatment.

However, Defendant also requested Plaintiff's medical records for a period prior

to her departure from employment—back to 2016. Defendant contends that such

records are necessary to determine whether Plaintiff had pre-existing medical issues, making them relevant to the question of causation. The Court agrees that these records are relevant and thus should be produced.

Accordingly, based on the briefing, it appears that Plaintiff has indicated she has produced all post-separation medical records. To the extent she has not, she must do so. Furthermore, Plaintiff shall identify treatment providers and produce all medical records dating back to January 1, 2016.

### 2. Plaintiff's Daughter's Records

Next, Defendant seeks certain medical records for Plaintiff's daughter, which pertain to Plaintiff's FMLA claim. Interrogatory No. 10 requests that Plaintiff "identify each and every hospital physician. . . and/or other healthcare provider, who has examined, treated, counseled, or consulted with [Plaintiff or her daughter] at any time concerning any impairment, illness or condition that [Plaintiff] claim[s] constituted a serious health condition for which [she] required FMLA leave." (*Id.* at Pg. ID 84.) In Document Request 26, Defendant seeks "all documents which evidence the alleged serious health condition of [Plaintiff's] daughter, for which [Plaintiff] claimed a need to take FMLA leave." (*Id.* at Pg. ID 99.) Request 27 seeks "any and all documents which support, negate or evidence [Plaintiff's] need to take FMLA leave while at CCHMC." (*Id.*)

Plaintiff appears to argue that she has no obligation to produce medical records to support her daughter's serious medical condition because she submitted the FMLA certifications to Defendant at the time leave was requested. Plaintiff's argument is not

well taken.  *See Moody v. Honda of America Mfg., Inc.*, No. 2:05-cv-0880, 2006 WL 1785464, at *5 (S.D. Ohio June 26, 2006). In *Moody*, this Court explained that "information about the course and history" of a medical condition that led to a party taking FMLA leave "both before and after the days in question is relevant, at least for discovery purposes, to determine whether the illness was sufficiently serious on those days to justify her request for medical leave." *Id*.

Nevertheless, and despite her objection, it appears that Plaintiff has requested her daughter's medical records from August 2018 through February 2019 and intends to produce them.  (Response in Opposition, Doc. 15, Pg. ID 112.)  Defendant responded that, once those records are produced, they should satisfy Plaintiff's obligation under the Request. (Status Report, Doc. 17, Pg. ID 188.)  Accordingly, Plaintiff shall produce her daughter's medical records as described in Plaintiff's Response.

### B.    Disability Benefits

Defendant also seeks information pertaining to Plaintiff's pursuit of disability benefits.  Document Request 29 asks Plaintiff to "produce all documents provided by, or received by, [Plaintiff] (or anyone on [Plaintiff's] behalf) in pursuit of any disability benefits, . . . including but not limited to workers' compensation benefits and Social Security Disability benefits."  (Discovery Requests, Doc. 14-1 at Pg. ID 100.) Plaintiff seems to concede that Defendant is entitled to this information and outlines the documents that would satisfy this document request. (Response in Opposition, Doc. 15, Pg. ID 109-10) (identifying as responsive Plaintiff's complete worker's compensation claim file with the Ohio Bureau of Workers' Compensation, documentation concerning

her current workers' compensation lawsuit against Mercy Health, and her application for social security benefits and any documentation concerning her pursuit of such claim).

Accordingly, as there is no dispute as to the discoverability of these documents, Plaintiff must produce this documentation, as well as all other documents responsive to Defendant's request.

### C.      Communication with Defendant's Employees and About Defendant

Defendant seeks communications regarding Plaintiff's employment with Defendant and communications with Defendant.  Document Request 14 seeks "documents that evidence or refer to communications . . . between [Plaintiff] . . . and Defendant . . . ."  (Discovery Requests, Doc. 14-1 at Pg. ID 94.)  Document Request 15 seeks "e-mail messages, instant message logs, text messages . . . and/or any other electronic correspondence between [Plaintiff] and any other person(s) regarding or pertaining to [her] employment with Defendant, this litigation, its subject matter . . . ." (*Id.* at Pg. ID 95.)

Plaintiff admits that responsive text messages exist and that some have been produced. (Response in Opposition, Doc. 15, Pg. ID 112-13.) Plaintiff also admits that the text messages produced are partial text message chains.  (*Id.*)  She argues in passing that production of the full text message chains would be unduly burdensome.  (*Id.*)  But the briefing makes clear that Plaintiff has self-selected responsive text messages, rather than producing all messages to her attorney for evaluation and production of responsive messages.  Defendant has understandably raised concerns about both the

manner of selection and production, and has thus requested that full text message chains be produced.

The Court shares the concerns raised by Defendant. All responsive messages should be produced—not merely those identified as Plaintiff as "relevant." Moreover, any claim that such production is burdensome is both unsubstantiated and dubious, given that Plaintiff has already produced excerpts of these same text message chains. As such, Plaintiff must produce all text message chains requested, as well as any communications with Defendant's employees and communications Defendant not already produced and which are responsive to the requests.

### D. Plaintiff's 2019 W-2

Defendant seeks Plaintiff's W-2 forms as provided by her employer. Plaintiff contends that she has produced these and submitted copies of same with her brief. However, from the Court's review, it seems that Plaintiff has produced worksheets which appear to be filed with her tax returns and which seem to include all pertinent information from her W-2 forms. Accepting that these forms were filed with her tax returns, and thus represent her income as reported to the IRS, it seems superfluous for Defendant to demand the actual W-2 document provided by Plaintiff's employer. That said, to the extent Plaintiff still has her W-2 forms as provided by her employer, she should produce them.

### E. Withheld Documents

Finally, Defendant seeks clarification as to whether Plaintiff is withholding any documents due to her objections or whether she has fully responded to the discovery

requests. (Status Report, Doc. 17, Pg. ID 189.) Plaintiff should inform Defendant of this.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1)     Plaintiff **SHALL PRODUCE** all documents to the abovementioned discovery requests as set forth above, to the extent Plaintiff has failed to do so, within 14 days of this Order;

(2)     Plaintiff **SHALL IDENTIFY** the healthcare providers who have treated Plaintiff or her daughter for whom she took FMLA to the extent Plaintiff has not already done so, within 14 days of this Order;

(3)     Plaintiff **SHALL IDENTIFY** any requests to which responsive documents exist but which she is withholding on the basis of an objection, the document request the withheld documents are responsive to, and any legal objections or arguments she has as to why she is withholding the documents within 14 days of this Order; and

(4)     Defendant **SHALL PROVIDE** a status report to the Court outlining any failure in production of documents which satisfy the abovementioned requests within 28 days of this Order.

Lastly, the Court advises Plaintiff that discovery in this matter has continued long enough. Plaintiff needs to expediently produce all relevant documents as set forth above and sought by Defendant, a fact which should have been made clear during the informal discovery process. Should the Court be required to resolve any additional disputes pertaining to the abovementioned discovery requests, the Court will entertain a motion for sanctions by Defendant.

11

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _Matthew W. McFarland_____
JUDGE MATTHEW W. McFARLAND